INTER-ISLAND STEAM NAV. CO., Limited, v. WARD.

(Circuit Court of Appeals, Ninth Circuit. May 15, 1916.)

No. 2617.

1. APPEAL AND ERROR ⬡⟳928(1)—REVIEW—PRESUMPTIONS.

Where the instructions are not in the record, it will be presumed that they properly applied the law to the facts.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3749, 3753; Dec. Dig. ⬡⟳928(1).]

2. MASTER AND SERVANT ⬡⟳285(11)—INJURIES TO SERVANT—PROXIMATE CAUSE —JURY QUESTION.

Though the defendant master had assured plaintiff a new cable would be installed on the coal conveyer, none was, and on the morning of the injury the cable slipped from the pulley. Plaintiff, being foreman, attempted to pry it back upon the pulley with a crowbar. He did not remove the weight on the cable which gave it tension, the cable slipped from the pulley, knocking plaintiff from the conveyer to the dock, 25 feet below, and he sustained severe injuries. Held that, as plaintiff was justified in assuming that the master would install a new cable, pursuant to its promise, and as there was an emergency requiring quick action, when the cable slipped from the pulley, recovery cannot be defeated on the ground that machinery having been stopped, there was no danger, and that plaintiff's method of attempting to replace pulley was as a matter of law an intervening agency, breaking the causal between defendant's negligence, for it might have been foreseen, and therefore the question is one for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1035; Dec. Dig. ⬡⟳285(11).]

3. MASTER AND SERVANT ⬡⟳288(14)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

Where plaintiff, the foreman in charge of a coal conveyer, reported that a cable was defective, and was assured that a new one then on hand would be installed, he did not, the assurances having been made on Saturday, assume the risk of injury as a matter of law by returning to work on the following Monday, though the defective cable still remained, nor did he assume the risk of injury in attempting to replace the defective cable, when it slipped from the pulley.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1084; Dec. Dig. ⬡⟳288(14).]

In Error to the Supreme Court of the Territory of Hawaii, under Section 246 of the Judicial Code, as Amended by Act Jan. 15, 1915, c. 22, 38 Stat. 803.

Action by George E. Ward against the Inter-Island Steam Navigation Company, Limited, a Hawaiian corporation. A judgment for plaintiff was affirmed on writ of error to the Supreme Court of Hawaii, and defendant brings error. Affirmed.

Action at law by plaintiff (defendant in error) for damages on account of injuries sustained as a result of alleged negligence on the part of defendant (plaintiff in error, and hereinafter referred to as defendant company).

On March 10, 1913, George E. Ward filed his complaint in the circuit court of the First judicial circuit of the territory of Hawaii, to recover damages in the sum of $50,000 for injuries sustained while employed by the defendant company in the capacity of machinist and engineer, and foreman of the latter's coal conveyer, upon which his injuries were sustained. The complaint alleged that, on account of the frayed and worn-out condition of the cable used in drawing the coal cars between the wharf and the company's coal yard

on shore, it had a tendency to slip and become detached from the pulleys holding the same in position; that by reason of the unsafe, dangerous, and worn-out condition of the cable, and by reason of the negligence and carelessness of the defendant company, its agents, servants, and employés, in allowing and permitting the same to remain, continue, and be in use and operation, the cable on the 8th day of July, 1912, became detached and slipped from the pulleys holding the same in position; that while plaintiff was endeavoring to restore the cable to its proper position around the pulleys, and without any fault or negligence on his part, the cable, notwithstanding the efforts of plaintiff and others to keep and maintain the same in position, suddenly and with great force and violence flew and became entirely detached from the pulleys, and struck plaintiff upon his body, and hurled and precipitated him to the ground some 25 feet below; that defendant company, although well knowing the tendency of the cable to slip and become detached from the pulleys by reason and on account of its dangerous, unfit, and worn-out condition, carelessly, negligently, and knowingly failed and neglected to provide a suitable, or any, platform or guard rail around the tracks, so that reasonable protection might be afforded those obliged to work around and near the cable, in the event of the cable slipping from the pulleys or rollers; and that by reason of the unsafe, unfit, dangerous, and worn-out condition of the cable, so supplied and furnished by the defendant company, and by reason of the negligence and carelessness of the defendant in failing to provide a suitable, or any, platform or guard rail, as hereinabove alleged, the plaintiff suffered and still suffers the injuries complained of..

The defendant company having filed a general denial, the action came on for trial before the circuit court and a jury. At the conclusion of the plaintiff's case, the defendant company moved for a nonsuit on the ground, among others, that the proximate cause of the injury to plaintiff was his own negligent act; he having attempted to restore the cable to its proper position around the pulleys by prying the same with a crowbar, and without first removing the tension from the cable by lifting or removing the weighted box of about 500 pounds weight which hung suspended from the cable, maintaining a high tension throughout its entire length. The motion for a nonsuit having been granted, the plaintiff sued out a writ of error to the Supreme Court of Hawaii, where the judgment of nonsuit was held erroneous, reversed, and the case remanded for a new trial. 22 Hawaiian Reports, 66.

On the second trial the defendant company moved as before for a judgment of nonsuit at the conclusion of the plaintiff's case, on the same grounds, which motion was denied on the authority of the decision of the Supreme Court of Hawaii, and the defendant thereupon put on its case. The defendant thereupon requested the court to instruct the jury to find in its favor, and, this having been denied, the case went to the jury, resulting in a verdict in favor of the plaintiff in the sum of $13,000. The defendant company excepted to the verdict as contrary to the law and the evidence, and moved for a new trial, which was denied. Judgment was entered in favor of the plaintiff in the sum of $13,097.20.

The defendant company thereupon took the case to the Supreme Court of Hawaii by writ of error; the main errors assigned being the denial of its motion for nonsuit, the refusal of the trial court to instruct the jury to find in its favor, the rendering of the verdict, the denial of its motion for a new trial, and the entering of judgment against the defendant company and in favor of plaintiff in the sum of $13,097.20. On March 24, 1915, the Supreme Court of Hawaii rendered its decision holding that no error had been committed. 22 Hawaiian Reports, 488. From the judgment entered pursuant to this decision, defendant company sued out the writ of error to this court, under section 246 of the Judicial Code, as amended by Act Jan. 15, 1915, c. 22 (38 Stat. 803).

W. O. Smith, L. J. Warren, E. W. Sutton, Henry Holmes, and C. H. Olson, all of Honolulu, T. H., for plaintiff in error.

E. A. Douthitt, of Honolulu, T. H., for defendant in error.

Before GILBERT and MORROW, Circuit Judges, and RUDKIN, District Judge.

MORROW, Circuit Judge (after stating the facts as above). There was evidence tending to show that the defendant company was negligent in maintaining a defective cable for the purpose of hauling cars along the coal conveyer from the ship to the coal yard. The cable had been in use about 10 months at the time of the accident. The evidence tended to show that the life of such a cable was about 8 months; that the cable was worn by use to such an extent that the strands of wire on the outside surface had broken and the ends stuck out from a quarter of an inch to an inch; that this defective condition of the cable caused it to rise up on the pulleys and come off; that with these broken strands it was in a dangerous condition and unfit for the use in which it was being employed; that the unsafe condition of the cable had been brought to the attention of M. E. Gedge, the secretary and treasurer of the defendant company, who was the proper officer to whom such notice should have been given; that this notice was given by the plaintiff and another employé more than a month prior to the date when plaintiff was injured; that on the Saturday previous to the Monday when the plaintiff was injured the cable came off the pulleys, and plaintiff again notified Mr. Gedge of the fact, and told him that they would have to have a new cable, and he said, "All right, a new cable would be put in;" that a new cable was on hand and could have been put in on Sunday. Plaintiff testified that he relied upon this promise of Mr. Gedge that a new cable would be put in by Monday.

About 7 o'clock in the morning of that day plaintiff returned to his usual work on the wharf and on board the vessel where he was engaged in superintending the discharge of coal to be carried by the conveyer from the wharf to the coal yard. Between 9 and 10 o'clock he was told that the cable was off from the pulleys. The foreman of the conveyer was absent. Plaintiff thereupon went up to the elevated track of the conveyer, the engine was stopped, and, with others, he was proceeding by the use of crowbars to return the cable to its place on the pulleys, when he was struck by the cable, knocked from the conveyer structure, and, falling about 25 feet to the wharf below, received the injuries described in the complaint. There was no platform or guard rail at or near the pulleys, for the protection of workmen engaged in handling or working on the cable in that part of the conveyer.

[1, 2] This evidence, and the legitimate inferences to be drawn therefrom, the jury had a right to believe; but it is contended on behalf of the defendant that there was no evidence that the negligence here recited was the proximate cause of the injury to the plaintiff, and that the trial court was in error in refusing to so instruct the jury, as requested by the defendant. The argument is that, as the cable was at rest at the time of the accident, the fact that it was off the pulleys created the occasion calling plaintiff to the place where it came off for the purpose of replacing it; but at that point of time and place the effect of defendant's negligence with respect to the defective cable had ceased to operate, that the place, in and of itself, was no longer dangerous, and that it only became dangerous when the independent or intervening act of the plaintiff came into play, resulting in the accident.

In support of this view, it is contended that the proximate cause of the accident was the failure of the plaintiff to have the tension of the cable relieved by having a weighted box, suspended from the cable at another place in the structure, lifted from the cable, so as to give it slack, and thus enable the plaintiff to replace it in safety. But there was evidence tending to show that the cable appeared to have sufficient slack to justify the plaintiff in his effort to replace the cable on the pulleys without the delay required to go to another part of the structure and lift the weighted box. The plant was in operation, with its employés at work in the hold of the vessel, where buckets were being filled with coal, and by a continuous movement the coal was being hoisted and dumped into cars, to be hauled by the cable along the track of the conveyer and dumped into the coal yard. The method adopted by the plaintiff for restoring the cable to its place on the pulleys was immediate and avoided delay, and had been pursued before; and this was known to Mr. Gedge, who was the responsible official of the defendant company in charge of the work. The inference to be drawn from this situation is that the plaintiff's duties required him to replace the cable on the pulleys with the least possible delay, that the conveyer might be in operation and the employés kept at work discharging coal from the vessel. The situation was one of emergency, calling for the exercise of ordinary care and prudence on the part of the plaintiff, and, probably influenced by what had been done before, he used the crowbar to replace the cable to its position on the pulleys. The act of the plaintiff and its consequences, considering the unguarded structure, were, therefore, what the defendant might reasonably have anticipated, apprehended, or foreseen.

In Southern R. R. Co. v. Webb, 116 Ga. 152, 42 S. E. 395, 396, 59 L. R. A. 111, 112, the Supreme Court of Georgia had before it the question whether, after an original wrongful act had spent its force and a new cause had intervened, which of itself was sufficient to stand as the cause of misfortune, the former must be considered, as a matter of law, too remote to be submitted to the jury in determining the liability of the original wrongdoer for the injury sustained. The court reviews the leading cases upon this subject and reaches the conclusion that, if the character of the intervening act, claimed to break the connection between the original wrongful act and the subsequent injury, was such as its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrongdoer, the causal connection is not broken, and the original wrongdoer is responsible for all of the consequences resulting from the intervening act. The Supreme Court held that, the jury having solved the question to their own satisfaction, and the trial court having approved their solution, the appellate court had no authority to interfere. As said by the Supreme Court of the United States in Milwaukee R. R. Co. v. Kellogg, 94 U. S. 469, 474, 24 L. Ed. 256:

"The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it."

We need not multiply authorities upon this question. The attempt to solve it as a question of law has resulted in a multitude of decisions in which the courts have endeavored to establish a general rule applicable to all cases, but rarely has it been possible to dispose of the question as one of law alone. In the present case we think the evidence is sufficient to show that the proximate cause was a mixed question of law and fact. In Labatt on Master and Servant (2d Edition, § 1572; 1st Edition, § 805) the rule is stated as follows:

"Whether the breach of duty established in the given case was the proximate cause of the injury is a mixed question of law and fact. It is, therefore, primarily one for the jury to determine under proper instructions. A court will not undertake to settle it in any case, where it involves the weighing of conflicting evidence, the balancing of probabilities, and the drawing of inferences."

In the opinion of the Supreme Court of the territory it is stated that "the question of the proximate cause was properly submitted to the jury." The instructions of the court are not in the record, and we are, therefore, not informed as to their character; but we must assume that the instructions were given with proper reference to the evidence and upon a correct and sufficient statement of the law applicable thereto, if the question was to be submitted to the jury under any possible aspect of the evidence. The jury by their verdict found in effect that the proximate cause of the injury was the negligence of the defendant. This verdict was approved by the trial court upon a motion for a new trial, and by the Supreme Court of the territory upon a writ of error to that court. In the face of this verdict, and the judgments of the trial and appellate courts, we cannot hold, as a matter of law, that reasonable men could not come to the conclusion that the defendant's negligence was the proximate cause of the injury to plaintiff.

[3] It is next contended that the plaintiff assumed the risk attending the work of replacing the cable on the pulleys. The rule with respect to this defense has been definitely stated and has been applied by the Supreme Court of the United States in a number of cases. A late case is that of Seaboard Air Line v. Horton, 233 U. S. 492, 504, 34 Sup. Ct. 635, 640 (58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475). Referring to risks which are not naturally incident to the occupation, but arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work, the court says:

"These the employé is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them."

The court states further elements of the rule as follows:

"When the employé does know of the defect, and appreciates the risk that is attributable to it, then if he continues in the employment, without objection, or without obtaining from the employer or his representative an assurance that the defect will be remedied, the employé assumes the risk, even though it arise out of the master's breach of duty. If, however, there be a promise of reparation, then during such time as may be reasonably required

for its performance, or until the particular time specified for its performance, the employé relying upon the promise does not assume the risk, unless at least the danger be so imminent that no ordinarily prudent man under the circumstances would rely upon such promise."

This case is authority for the further rule that, when these elements are present, the question whether there was an assumption of risk by the plaintiff is a question for the jury under proper instructions. The evidence shows that the plaintiff complained to the proper official of the defendant company that the cable was defective and unsafe and secured a promise that the defective cable would be replaced by a new one. A new cable was on hand, with which the defective cable might have been replaced during the period between Saturday and Monday, when the work of discharging the coal was suspended. This the defendant neglected to do. The plaintiff returned to his work on the vessel on Monday morning, when he had the right to suppose a new cable had been placed in position. When the cable came off a few hours later, and he ascended to the top of the conveyer to see what was the matter, he may have learned for the first time that the defective cable had not been replaced by a new one. He was then confronted with an emergency with which he had to deal promptly, in view of all the surrounding circumstances. Whether, under such circumstances, he appreciated the risk attending the replacing of the cable in the way he attempted to replace it was a question of fact to be determined like any other question of fact.

In Kane v. Northern Central Railway, 128 U. S. 91, 9 Sup. Ct. 16, 32 L. Ed. 339, it was contended that the plaintiff, who was a brakeman on a freight train, was guilty of contributory negligence in staying upon the train in the capacity of a brakeman after observing that a step was missing from one of the cars over which he might pass in discharging his duties, and that he assumed the risk attendant upon such heedless exposure of himself to danger. "But," the court said, "in determining whether an employé has recklessly exposed himself to peril, or failed to exercise the care for his personal safety that might reasonably be expected, regard must always be had to the exigencies of his position, indeed, to all the circumstances of the particular occasion." In this case the court held that the circumstances were such that the question involved should be submitted to the jury. In Shearman & Redfield on the Law of Negligence, § 211, the author, in discussing the duty of a servant under such circumstances, says:

"If every man should cease from work upon the instant of discovering that his safety was imperiled by the negligence of some other person, the business world would come to a stand. If every servant on a railroad or in a factory should refuse to work by the side of a negligent fellow servant or with defective materials, immediately upon becoming aware of the fact, such enterprises could never be carried on. Obviously a reasonable time must be given for removal of the defect; and meantime the business must be carried on with no prejudice to the servant's rights, unless the risk is so great that no one, acting with ordinary prudence, would go on under the circumstances."

We are of the opinion that the question whether the plaintiff assumed the risk of replacing the cable on the pulleys in the way he attempted to replace it was a question for the jury under proper instructions.

With respect to the question of contributory negligence on the part of plaintiff in failing to raise the weight taking up the slack of the cable, so as to make it safer and easier to replace the cable upon the pulleys, the Supreme Court of the territory correctly stated the controversy, and the evidence upon which it was based, in the following language:

"Upon this phase of the case there were conflicting evidence and theories—that of the plaintiff being that it was not necessary, as there were two or three inches of slack at the place where the cable had slipped off the pulleys, all that was necessary, and that lifting the weight would not give any more slack at the place where the cable was to be replaced on the pulleys, unless the cable was drawn by hand from the point where the weight was installed to the point where the cable was to be replaced on the pulleys; the theory of the defendant being that lifting the weight would have given sufficient slack at the point where the pulleys were to be replaced to make it safe to replace them, and that if the weight had been lifted the injury would have been avoided. This feature of the case, covering the question whether or not the plaintiff was guilty of contributory negligence which caused his injury, was submitted fairly to the jury by the court under proper instructions, and the finding of the jury was against the contention of the defendant, and the verdict, so far as the question of contributory negligence on the part of the plaintiff is concerned, should not be disturbed."

In Texas & Pac. Ry. Co. v. Harvey, 228 U. S. 319, 324, 33 Sup. Ct. 518, 520 (57 L. Ed. 852), the Supreme Court of the United States said:

"It has often been held in this court that ordinary negligence or contributory negligence is not a question of law, but of fact, to be settled by the finding of the jury. Where there is uncertainty as to the existence of negligence or contributory negligence, whether such uncertainty arises from a conflict of testimony, or because the facts being undisputed, fair-minded men might honestly draw different conclusions therefrom, the question is not one of law."

We concur in the opinion of the Supreme Court of the territory that the verdict of the jury upon this question should not be disturbed, and upon the whole case we think the judgment of the Supreme Court of the territory should be affirmed; and it is so ordered.