CAROLYN ELIZABETH MITCHELL *v.* DOUGLAS BRANCH AND RICHARD THOMAS HARDY.

No. 4141.

JULY 11, 1961.

TSUKIYAMA, C. J., WIRTZ, LEWIS, JJ., CIRCUIT JUDGE HEWITT, ASSIGNED BY REASON OF VACANCY AND CIRCUIT JUDGE DYER IN PLACE OF CASSIDY, J., DISQUALIFIED.

OPINION OF THE COURT BY WIRTZ, J.

On December 16, 1956, two couples joined for a picnic on the windward side of Oahu, each couple traveling in a separate automobile, with plaintiff riding with appellee. While traveling along Kamehameha Highway in the direction of Kaneohe, appellee lost a hub cap and stopped his vehicle in order to retrieve same; appellant, being unaware of appellee's stop, continued along the highway towards Kaneohe. When he missed appellee, appellant brought his vehicle to a stop on the shoulder of the road in order to wait for appellee. Kamehameha Highway at this point consisted of two lanes, the mauka or right lane (in proceeding towards Kaneohe) being ten feet wide and the mauka or right shoulder of the road being seven feet wide.

Appellee after resuming travel, drove around a curve in the road when he noticed appellant's automobile in the position aforesaid. Deciding to take the lead, appellee, who was traveling approximately forty-five or fifty miles per hour pulled to the left, over the center line of the highway, to pass appellant. At the same time appellant suddenly, and without notice to appellee, drove his vehicle

across the highway obstructing the makai or left lane and a portion of the mauka lane thereof. Appellant's intention was to make a U-turn in order to retrace his route and find appellee. Appellant had not observed appellee although, had he looked, he could have seen appellee's approaching vehicle.

This maneuver of appellant, which the trial court found to be "grossly negligent," came as a complete surprise to appellee, who then found himself confronted with an emergency situation. In order to avoid a broadside collision, appellee swerved to the right, applied his brakes, and went onto the mauka shoulder of the road. The trial court found that appellee acted reasonably in making such movement but used poor judgment in going onto the shoulder as far as he did. Appellee's vehicle struck a portion of a culvert and rolled over causing the injuries to plaintiff which became the subject of this action.

The trial court found that had appellee applied his brakes at the very moment the emergency presented itself, he might have brought his vehicle to a stop without mishap. It also found, however, that there was not much of a safety margin in such a move as the distance between the two cars was so short. The court further found that appellee could have avoided a collision by driving along the mauka side of appellant. Although this action would have necessitated appellee's driving onto the mauka shoulder of the highway, it would not have necessitated his going so far to the right on the shoulder as he did. Appellee's election to pass to the right when faced with the emergency was found by the court to be reasonable, but it was also found that appellee's later conduct in proceeding to the extreme right of the shoulder of the highway constituted a negligent act. The trial court concluded that the negligence of each of the parties defendant was a proximate cause of the injuries suffered by plaintiff. Dur-

ing the course of trial a settlement was achieved in favor of plaintiff. Appellee reserved his right to seek contribution against appellant. The relative degree of fault between the parties defendant was determined by the court to be sixty-five per cent attributable to appellant and thirty-five per cent to appellee. From the judgment entered accordingly, appellant brought this appeal.

The first specification of error relied upon is that "the circuit court erred in holding that appellant's act of making a U-turn was a proximate cause of the accident and plaintiff's injuries."

Appellant contends that the trial judge's "ultimate" finding that "the above negligence of defendant [appellant] Hardy was a proximate cause of the accident" is inconsistent with and does not logically follow from the "evidentiary" findings of fact, especially Finding of Fact No. 14. This finding was that "the defendant [appellee] Branch in electing to take the course which he did, exercised due care when faced with an emergency. That the defendant Branch, although not negligent in making the election, nevertheless, was negligent in that once he had made such an election, he misjudged his distance and used poor judgment by placing his vehicle too far out towards the mauka edge of the shoulder of the highway."

To impose liability on a negligent party for an injury to another, there must be a causal connection between the negligent act and the injury. *Richardson* v. *Parker,* 205 Okla. 137, 235 P. 2d 940. The mere co-existence of negligence and injury (*Flamm* v. *Coney Island Co.,* 49 Ohio App. 122, 195 N.E. 401), or the existence of negligence prior to the injury (*Dunn* v. *Central State Hospital,* 197 Ky. 807, 248 S.W. 216), is not in itself sufficient to establish this necessary causal relationship. The injury must be the result of, or flow from, the negligent act before the negligent party is held liable. *Richardson* v. *Parker, supra.*

Where there are two negligent acts by separate parties which seemingly lead to the injury, each of the acts may be held to be a contributing proximate cause of the injury and liability may attach to both parties for their concurrent negligence, *Southern Pacific Co.* v. *Raish,* 205 F. 2d 389 (9 Cir. 1953) ; or if the negligent act of one is later in point of time, such act may be sufficient to interrupt the causal chain established by the other, in which case only the later act is the proximate cause and the party committing it is solely legally liable. *Medved* v. *Doolittle,* 220 Minn. 352, 19 N.W. 2d 788.

No issue is made of the finding of the trial court that appellant's conduct was "grossly negligent." Nor do we understand appellant to contend that his negligent conduct was not a factor in causing plaintiff's damage. He simply contends that his conduct was not a "proximate cause" of the accident.

The best definition and the most workable test of proximate or legal cause so far suggested seems to be this : "The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm." Restatement, Torts, § 431; Prosser on Torts, § 47.

Appellant's negligence in blocking the highway was a substantial factor in causing plaintiff's damage. Indeed it was the most important factor, for it really put the others into operation. It need not have been the whole cause or the only factor. It was enough that his negligence was a substantial factor in causing plaintiff's injuries. Restatement, Torts, §§ 431, 433, 435; *Cf. Waller* v. *Skeleton,* 31 Tenn. App. 103, 212 S.W. 2d 690.

There is no question but that appellant's conduct was a substantial factor in producing plaintiff's injury. What

we are concerned with in determining if the negligence of appellee constitutes a superseding cause is simply whether there is applicable in the situation which confronts us a rule of law which restricts liability so as to not require appellant to pay a share, though harm was caused and there was on his part a breach of a duty, or negligence. It is actually a rule of restrictive liability considered as a question of causation.

To the situation at hand, appellant would apply the doctrine of *Kline* v. *Moyer*, 325 Pa. 357, 191 Atl. 43, that where "a second actor has become aware of the existence of a potential danger created by the negligence of an original tort-feasor, and thereafter, by an independent act of negligence brings about an accident, the first tort-feasor is relieved of liability because the condition created by him was merely a circumstance of the accident and not its proximate cause." As thus applied he concludes, under these findings, that the "negligent acts of the appellant were thus only a circumstance of the accident and not a legal contributing cause. * * *"

The doctrine of the *Kline* case, *supra,* is "based upon the reasoning that it is not reasonably to be foreseen nor expected that one who actually becomes cognizant of a dangerous condition in ample time to avert injury will fail to do so." *Hillyard* v. *Utah By-Products Co.,* 1 Utah 2d 143, 263 P. 2d 287, 292. It envisages a situation in which the second actor has sufficient time, after being charged with full knowledge of the hazard, to avoid it. In other words, the first actor's negligence creating the hazard becomes static so that the full extent thereof is cognizable before the second actor proceeds. In the case before us, appellant's negligence had not become static as his car was not parked but on the contrary was being driven by appellant, who still had to extricate himself from his precarious position astride the highway so that

the full extent of the hazard appellant was creating was not cognizable to appellee when he acted. Also, the election of appellee to go around appellant's vehicle and the negligent execution of the same were all part of a practically simultaneous movement to avert disaster presented by an emergency situation caused by appellant's misconduct in swinging across the highway at the time when appellee was approaching, so that it can hardly be said that appellee had "ample time to avert injury." The *Kline* case, *supra,* actually holds that an intervening negligent act is not a superseding cause, unless the intervening actor, having actual knowledge of the full extent of the potential danger, thereafter independently acts in a manner which is unreasonably dangerous.

The doctrine of *Kline* v. *Moyer, supra,* was evoked in an effort to extricate the law of Pennsylvania from a morass of conflicting decisions on this question of intervening cause operating as a superseding cause. It also was intended to limit and restrict the "last human wrongdoer" rule of causation which apparently had become ingrained in the policy of that court at the time. As such, it was largely influenced by that rule although it was a step towards the rule adopted by the American Law Institute in its Restatement of the Law of Torts.

Apart from its inapplicability to our situation this doctrine has been subjected to criticism as being unsound in principle in placing an undue premium on negligence prior to awareness as opposed to negligence subsequent to awareness:

> "* * * [T]here is no sound public policy which requires us to close our eyes to realities when considering the question of superseding cause. In such a case we are dealing with a man who is admittedly a wrongdoer, who has admittedly violated a duty which was created to protect the plaintiff from the

harm which he has suffered. We are dealing with a man whose breach of duty to the plaintiff has been found to be a substantial factor in causing the plaintiff's harm. Normally the plaintiff is entitled to have such a man pay for it. Under such circumstances the intervening negligence should be extraordinary indeed before the defendant is permitted to escape from liability.

"* * *

"Opinions will naturally differ as to what sort of intervening human negligence is extraordinary or not expectable. In *Kline* v. *Moyer* the court took the position that it is not unexpectable for a motorist to be negligent in driving his automobile in such a way as to be unable to stop within the assured clear distance ahead; but that it is unexpectable and would constitute a superseding cause, if the motorist after having knowledge of an obstruction in the road fails to exercise a then existing ability to avoid, by the exercise of due care, swerving to the other side of the highway and striking another car. However, there does not appear to be any great fundamental difference between that type of negligence which consists of inattention to one's surroundings so that the danger is not perceived in time to avoid it, and that type of negligence which consists of a failure to measure up to the standard of the reasonable man in taking proper steps to avoid an observed danger. It seems to be just as foreseeable that a person who sees a danger may be negligent in becoming more rattled, or in having a slower reaction time, than a reasonable man, as that a person may be negligent in failing to notice the danger in time to avert harm. * * *" 86 U. Pa. L. Rev., pp. 134, 135.

Appellant's position is that, even if the finding of his

negligence in the making of a U-turn obstructing the high-way be justified, the later occurring negligent act of appellee in swerving too far off the highway in an effort to avoid a collision was the immediate, efficient and there-fore the sole proximate cause of the injury, his argument being that the circumstances shown in the evidentiary findings of the trial court were such that the only per-missible ultimate finding would be that appellee's negli-gence was such an intervening act as to supersede appel-lant's obstruction of the highway and insulate the same from being a substantial factor in causing the injury.

It is uniformly affirmed by leading authorities that this argument would be valid only if appellee's conduct was so unusual, so out of the ordinary, so unforeseeable as to be unanticipatable from a legal point of view.

Professor Bohlen has said:

"The decided though perhaps not unanimous tend-ency of modern authority is to make the liability of the original actor depend not upon the negligence or even intentional wrongfulness of the subsequent act of a third party, which is the final decisive cause of the plaintiff's harm, and so upon the legal culpability of such act, but rather upon this,—whether or not, in view of the surrounding circumstances, and the con-ditions which the defendant's conduct may be expected to create, the third party's subsequent action was normal, and so, expectable * * *. There is normally no reason to anticipate wilful wrongdoing of others, but this bears only on the question as to whether the act is expectable or not. In exceptional situations even wilfully wrongful acts of others are normal and expectable. * * *" Bohlen, *Studies in the Law of Torts,* (1926), pp. 504, 505.

More recently Professor Bohlen has written:

"* * * The earlier of the two wrongdoers, even

though his wrong has merely set the stage on which the later wrongdoer acts to the plaintiff's injury, is in most jurisdictions no longer relieved from responsibility merely because the later act of the other wrongdoer has been a means by which his own misconduct was made harmful. The test has come to be whether the later act, which realized the harmful potentialities of the situation created by the defendant was itself foreseeable. * * *" 50 Har. L. Rev., pp. 1225, 1229.

In an article entitled "Culpable Intervention As Superseding Cause," 86 U. Pa. L. Rev., pp. 121, 125, Professor Eldredge states:

"* * * Suffice it to say that the decided modern trend of authority, both in England and America, has been to make the liability of the defendant turn upon whether the intervening human action was foreseeable and to hold the defendant liable where in the retrospect the intervening act did not appear to be particularly unusual or extraordinary. * * *"

The Restatement of the Law of Torts (Volume II, Negligence) essentially expressed the same concept in a different manner:

"§ 447. *Negligence of Intervening Acts.*

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

"(a) The actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b) A reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

"(c) The intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

It was reasonably foreseeable in the instant case that any automobile driver traveling at the speed appellee was, upon suddenly being confronted with the emergency situation presented, would have taken like evasive action in normal response to the situation and in so doing might have misjudged the width of the shoulder along the highway so as to tip his car over as did appellee. We cannot say, as a matter of law, that the trial court would not have the right to draw the inference that it was reasonably foreseeable that obstructing the highway by making a U-turn might cause another who is approaching to swerve off the highway in an effort to avoid a collision and in doing so misjudge distances so as to tip over. The negligence of the operator of a motor vehicle in obstructing a highway may be a proximate cause of injury even though the negligence of the operator of another motor vehicle is an active and later force in contributing to the final result. One cannot excuse himself from liability arising from his own negligent conduct merely because the later negligence of another concurs to cause an injury, if the later act was a legally foreseeable event. *Carlson* v. *Fredsall*, 228 Minn. 461, 37 N.W. 2d 744; *Northern Indiana Transit* v. *Burk*, 228 Ind. 162, 89 N.E. 2d 905; *Texas Co.* v. *Blackstock*, 21 S.W. 2d 13 (Tex. Civ. App.); *Ferroggiaro* v. *Bowline*, 153 Cal. App. 2d 759, 315 P. 2d 446; *Herzberg* v. *White*, 49 Ariz. 313, 66 P. 2d 253. *Cf. Miles* v. *Van Hagen*, 53 Cal. App. 2d 750, 128 P. 2d 89; *Butts* v. *Ward*, 227 Wis. 387, 279 N.W. 6.

In the present case the question presented is whether or not, when appellant negligently made his U-turn, and thus obstructed the highway, it was reasonably foreseeable that, as a result, a following car might swerve off

the highway in an effort to avoid a collision. We think the answer is clear that it cannot be said, as a matter of law, that the type of accident that did occur was not reasonably foreseeable. Nor can we say, as a matter of law that appellee's negligence was unpredictable or highly extraordinary or that it was not a normal response to the situation facing him.

"* * * It is a rare case where the court may hold, as a matter of law, that the intervening act breaks the chain of causation because whether it was reasonably foreseeable is a question of fact and not of law. The second act will break the chain of causation only where, under no rational interpretation of the evidence, could the later act of negligence have been reasonably foreseen." *Jones* v. *City of South San Francisco,* 96 Cal. App. 2d 427, 435, 216 P. 2d 25, 30.

Where there is conflicting evidence, as there is in this record, on the issue of proximate causation, the question is one for the trier of fact. *Young* v. *Honolulu Construction & Draying Co.,* 34 Haw. 426; *Hughes* v. *McGregor,* 23 Haw. 156. The determination of the trier of fact, here the trial judge, will "not be set aside unless clearly erroneous." H.R.C.P., Rule 52(a). Further, "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." H.R.C.P., Rule 52(a). The law is clear that an appellate court may not pass on the credibility of witnesses. In *Lima* v. *Tomasa,* 42 Haw. 478, 481, the court held:

> "Under the rule, the trial court's findings of fact may not be set aside unless clearly erroneous. The rule also enjoins this court to give due regard to the opportunity of the trial court to judge of the credibility of the witnesses."

It is generally recognized that the determination of the trier of fact will not be reversed unless clearly erroneous.

"Experience has established, and daily confirms, that 'proximate cause', 'sole negligence', 'contributory negligence', 'concurring negligence', and 'last clear chance' are not absolutes. It is the exceptional case when they can be determined and enforced as a matter of law. Determination of the existence or nonexistence of these elements in a given case generally must be made upon consideration of all the facts, with the result usually influenced and controlled by the comparative weight which the trier of facts accords the acts of the parties when compared with what would have been done in the same or similar circumstances by the law's 'prudent man'. It is only natural then, that, upon review of such findings, the reviewer may frequently conclude that the evidence would also support a contrary finding. But in cases like the present the proper test is to ascertain whether the determination of the trial Court is 'clearly erroneous'. * * *'" *Humphries* v. *Boersma*, 190 F. 2d 843, 845 (5 Cir. 1951).

There is a surplus of substantial and compelling evidence to support a trial court's findings of fact in this case. Even the finding that appellee was also negligent finds some solace in the evidence.

Being a question of fact, the finding of proximate causation was the province of the trier of fact. We see no reason to disturb the finding by the trial court that "the above negligence of defendant Hardy was a proximate cause of the accident." There is no inconsistency between this ultimate finding of fact and the evidentiary findings of the trial court. The election by appellee of his course of movement and his negligent execution of the same were all part of an almost simultaneous operation under the stress of the emergency situation he was confronted with and were the result of the negligence of appellant and

not independent thereof. Though the trial court did not in so many words find that the emergency situation was a substantial factor in causing appellee to go too far onto the shoulder as well as in causing his decision to travel mauka of appellant's car, that is the intendment of the findings read as a whole. There is no necessity for a remand for a further finding on the point, for a further finding is not necessary to "a full understanding of the question presented." See 5 Moore, *Federal Practice*, 2d ed., § 52.06(2).

The second specification of error questions the apportionment of the damages awarded to plaintiff by agreement, in that "the circuit court erred in holding that appellant's acts contributed to the accident in the amount of 65%."

Section 246-11 of the Revised Laws of Hawaii 1955, provides in part:

"When there is such a disproportion of fault among joint tortfeasors as to render inequitable an equal distribution among them of the common liability by contribution, the relative degrees of fault of the joint tortfeasors shall be considered in determining their pro rata shares. * * *"

Appellant contends that "[even] if the acts of the appellant are found to be a contributing proximate cause of the accident, he should bear no greater than half of the total liability. There is no evidence which would clearly indicate that his acts were primarily responsible for the accident and the lower court's determination of his liability bears no stated relation to the evidence presented."

The primary purpose of the Uniform Contribution Among Tortfeasors Act (Part II, Chapter 246, R.L.H. 1955) is that the most culpable party should sustain that share of the loss which is commensurate with his degree of fault. The inequity of equal contribution among joint

tort-feasors has been removed in cases where the gross negligence and foolhardiness of one party has joined with an act of negligence of a second party to produce the injuries complained of. In *Little* v. *Miles*, 213 Ark. 725, 727, 212 S.W. 2d 935, 936, the Arkansas Supreme Court construed the purpose of the Uniform Act to be:

> "* * * The intent [of the Act] was to permit finders of facts to decide relative responsibility of each tortfeasor and to hold him responsible in that proportion only. * * *"

Such allocation of damages is not solely the province of the jury. It is equally applicable to the trial court in jury waived cases:

> "The apportionment device is intended to work as follows: If the evidence indicates that there is a disproportion of fault among the tortfeasors, the court shall instruct the jury that if it finds the tortfeasors to have been negligent, they shall also fix their relative degrees of fault. Thus if the court believes that an apportionment of fault is inappropriate in a particular case, none will be made. Naturally, a court trying a case without a jury will itself make the apportionment of fault when appropriate. * * *" 9 *Uniform Laws Annotated*, p. 237.

In review of a determination of relative fault, the situation is analogous to that where an appellate court is called upon to review a verdict claimed to be excessive. Where damages are apportioned pursuant to the Uniform Contribution Among Tortfeasors Act (R.L.H. 1955, § 246-11), an appellate court should confine its inquiry solely to the question of whether, upon the evidence adduced and the trial court's findings thereon, the apportionment of damages was so clearly erroneous as to shock the moral sense. *Cf. Lima* v. *Tomasa*, 42 Haw. 478.

The trial court found herein "[that] the action of

defendant Hardy in attempting to execute a U-turn at the time when the vehicle of defendant Branch was approaching was, under the circumstances, dangerous and unreasonable and grossly negligent." This finding of gross negligence on the part of appellant, fully supported by the evidence adduced, is to be contrasted with the finding of ordinary negligence on the part of appellee. We therefore conclude that there is no adequate reason to disturb the apportionment of the damages between the parties defendant as made by the trial court, pursuant to § 246-11 aforesaid.

Affirmed.

*Frank D. Padgett* (*Robertson, Castle & Anthony* with him on the briefs) for appellant Hardy.

*James S. Campbell* (*Smith, Wild, Beebe & Cades* and *William L. Fleming* with him on the brief) for appellee Branch.